**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOE BALTAS, *et al.*,

    *Plaintiffs*,

vs.

CAROL CHAPDELAINE, *et al*,

    *Defendants.*

No. 3:17-cv-00242-MPS

## RULING ON MOTION FOR RELIEF FROM FINAL JUDGMENT

The plaintiffs, ten Connecticut Department of Correction ("DOC") inmates, bring this action challenging the conditions of their confinement in "Q-Pod"—a disciplinary unit housed within the MacDougall-Walker Correctional Institution. The plaintiffs allege, in part, that the DOC violated their free exercise rights. The Court (Chatigny, J.) granted summary judgment in favor of the defendants as to the plaintiffs' free exercise claims on the grounds of qualified immunity. On appeal, the Second Circuit reversed, holding that the free exercise rights of two of the plaintiffs—Joe Baltas and Peter Tarasco—were clearly established and that, absent a penological justification, the granting of qualified immunity was improper.

Following the Second Circuit's decision, six of the plaintiffs now ask the Court to vacate summary judgment as to their free exercise claims as well. Moving under Federal Rule of Civil Procedure 60(b)(6), these plaintiffs—Kenyon Joseph Pellot-Castellano, Jason Goode, Noah Gladding, Jose Ortiz, Richard Rice, and Phillip Rivera (hereinafter, "the moving plaintiffs")[1]— argue that their previous counsel failed to prosecute their free exercise claims and that such a

---

[1] Plaintiff Rivera did not join the Rule 60 motion at the time it was filed. He now seeks the Court's leave to join the motion. *See* ECF No. 171. I permit Rivera to do so and consider his declaration, ECF No. 171-1, alongside the declarations submitted by the other moving plaintiffs.

failure constitutes an "exceptional circumstance" requiring vacatur under the Rule. For the reasons stated below, I DENY their motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

I assume familiarity with the plaintiffs' claims and incorporate by reference the factual and procedural background set forth in Judge Chatigny's summary judgment ruling, ECF No. 95 at 1–8, and the Second Circuit's opinion addressing that ruling. *Baltas v. Chapdelaine*, 153 F.4th 328, 332–334 (2d Cir. 2025). A brief recitation of the relevant facts and procedural history is provided below.

In their operative complaint, the plaintiffs, through Attorney Frank Cannatelli, asserted causes of action under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as equivalent Connecticut constitutional provisions. *See* ECF No. 14 at 7–16. The case was originally assigned to U.S. District Judge Robert Chatigny.

Though the complaint's factual content encompassed 93 paragraphs, as to the plaintiffs' free exercise claims, the complaint contained only the following four conclusory allegations:

1) "The use of Q Pod by the Defendants has forced upon the Plaintiffs the following greater deprivations not experienced by other inmates: . . . Lack of Access to Religious Services, or if allowed, Severely Limited or Restricted." *Id.* ¶ 1.

2) "Plaintiffs were denied their rights to: . . . access to religious services . . . ." *Id.* ¶ 30.

3) "The Defendants . . . by creating this 'Q Pod' or ticket block, and sanctioning its operation . . . have denied the Plaintiffs their access to religious services, and free exercise of religion . . . ." *Id.* ¶ 31.

4) "Plaintiffs have been denied access to religious services." *Id.* ¶ 64.

The plaintiffs and defendants subsequently moved for summary judgment, ECF No. 47; ECF No 56. Like the complaint, the plaintiffs' summary judgment motion did not emphasize their free exercise claims; it mentioned the lack of religious services infrequently and vaguely. *See, e.g.*, ECF No. 47-1 at 10 ("[T]he Defendants then placed Plaintiffs in clearly more restrictive housing. This limited their use of the toilet, their recreation, their group involvement, their right to group meals, their religious services. No one can deny that the time spent in 'Q Pod' was more restrictive."). The motion did, however, attach evidence that Baltas and Tarasco were denied access to "smudging" and "sweat lodge" religious services. *See* ECF No. 47-3 at 21; ECF No. 47-5 at 6.

Judge Chatigny granted the defendants' motion as to the federal claims. ECF No. 95. In doing so, he addressed only Baltas's and Tarasco's free exercise claims. *See, e.g.*, *id.* at 30 ("Baltas and Tarasco may be able to prove that they were not allowed to engage in Native American religious practices in Q-Pod."). As to those claims, Judge Chatigny concluded that "[n]o relevant case authority has been cited or found that addresses the First Amendment free exercise rights of inmates to participate in sweat lodge or smudging services," and that the defendants were therefore entitled to qualified immunity. *Id.* at 32. The plaintiffs appealed, and while that appeal was pending, the case was reassigned to me.

The Second Circuit reversed. The Circuit held that "[i]t is well established that prisoners have a constitutional right to participate in congregate religious services," and that the district court "overlook[ed] the congregate nature" of sweat lodge and smudging services. *Baltas v. Chapdelaine*, 153 F.4th 328, 340–41 (2d Cir. 2025). The Circuit concluded that, absent a penological justification for the denials of these services, the defendants were not entitled to qualified immunity. *Id.* at 341. As to the free exercise claims of the remaining plaintiffs, the Circuit

3

noted that "[s]even of the nine Plaintiffs . . . fail[ed] to allege any burden on their sincerely held religious beliefs."[2] *Id.* at 340; *see also id.* ("They do not even claim they hold religious beliefs, much less that Defendants burdened their exercise of any such beliefs.").

After the Circuit issued its mandate, ECF No. 123, I held a telephonic status conference with the parties. During the conference, the plaintiffs requested leave to file a Rule 60 motion, which I allowed. *See also* ECF No. 148. The moving plaintiffs subsequently filed that motion. *See* ECF No. 157. The defendants did not file a response.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) is a mechanism for extraordinary judicial relief and may be invoked only if the moving party demonstrates exceptional circumstances." *Felton v. Loc. Union 804, Int'l Bhd. of Teamsters*, No. 22-2779-cv, 2024 WL 2813896, at *2 (2d Cir. June 3, 2024) (summary order) (internal quotations omitted). This high bar likewise applies to relief under Rule 60(b)(6), the provision invoked by the moving plaintiffs. Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case . . . [b]ut that reservoir is not bottomless." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). "Recognizing Rule 60(b)(6)'s potentially sweeping reach,

---

[2] The Second Circuit appears to have omitted Thomas DeLeo from its accounting of plaintiffs. This Court's docket continues to reflect ten plaintiffs, including DeLeo. The discrepancy is, however, immaterial, as just six of the plaintiffs seek relief under Rule 60, and DeLeo is not among them.

courts require the party seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief." *Id.* "The decision whether to grant a [ ] Rule 60(b) motion is committed to the 'sound discretion' of the district court . . . ." *Id.*

### III.    DISCUSSION

The moving plaintiffs seek Rule 60(b) relief on the basis of their prior counsel's inadequate representation. For a party to be entitled to such relief, "[their] lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through their physical disappearance or constructive disappearance." *Harris v. U.S.*, 367 F.3d 74, 81 (2d Cir. 2004) (internal citations omitted); *see also id.* ("In typical civil proceedings, this Court *very* rarely grants relief under Rule 60(b)(6) for cases of alleged attorney failure or misconduct." (emphasis in original)). The moving plaintiffs argue that Attorney Cannatelli "constructively abandoned" them insofar as he: 1) failed to develop their claims by providing "individualized assessments" and asking about their religious beliefs, ECF No. 157-1 at 8; 2) failed to enter their evidence of free exercise deprivations into the summary judgment record, *id.*; 3) failed to inform them that he was filing a dispositive motion on their behalf, *id.*; and 4) failed to provide them with material updates as to their claims, due in part to his being "in the midst of [state bar] disciplinary proceedings." *Id.* at 9. While this conduct undoubtedly constitutes negligence, and perhaps even gross negligence, that is, unfortunately, not exceptional. *See Klipsch Grp., Inc. v. Shenzhen Sosound*, No. 11-cv-9187, 2013 WL 1387061, at *3 n.4 (S.D.N.Y. Apr. 5, 2013) ("[I]t is well-settled in the Second Circuit that an attorney's gross negligence alone is not a basis for relief under Rule 60(b)(6).") (internal quotations omitted).

The moving plaintiffs nevertheless attempt to analogize Attorney Cannatelli's conduct to that of counsel in other cases where a court found constructive or actual abandonment. ECF No.

157-1 at 11–15. They point to the conduct of counsel in three cases in particular: 1) in *United States v. Cirami*, counsel assured his client that "everything was taken care of," but nevertheless failed to respond to the opposing party's motion for summary judgment, resulting in an "entry of summary judgment by default against his clients," *see* 563 F.2d 26, 29, 33 (2d Cir. 1977); 2) in *P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp*, counsel "simply disappeared," causing dismissal of the plaintiff's complaint for failure to prosecute, 151 F.R.D. 32, 33 (S.D.N.Y. Aug. 23, 1993); and 3) in *Ituarte by Ituarte v. Chevrolet Motor Div., General Motors Corp.*, counsel failed to respond to a magistrate judge's discovery orders, precipitating an order that precluded his clients from offering certain evidence at trial. No. 86-cv-2843, 1989 WL 10562, at *2 (E.D.N.Y. Feb. 2, 1989).

Counsel in all three cases were in the midst of a mental health crisis that had a material impact on their ability to represent their clients beyond the prototypical circumstances of heavy caseloads and attorney fatigue. In *Cirami*, the Second Circuit noted that counsel's failures were not "the product of neglect," but rather were "engendered by a mental illness which manifested itself to his clients only after they had relied on him for months." 563 F.2d at 34-35. In *P.T. Busana*, counsel was "undergoing treatment for severe depression," and her "disabling emotional condition fundamentally compromised her ability to provide adequate representation." 151 F.R.D. at 35. And in *Ituarte by Ituarte*, counsel's "depression and anxiety . . . contributed to his inability to effectively fulfill all of his professional responsibilities despite his conscientious efforts to do so." 1989 WL 10562, at *3; *see also id.* ("[T]he threshold issue confronting the court is whether or not, pursuant to Fed. R. Civ. P. 60(b), the court should grant plaintiffs relief from the preclusion order . . . on the ground that their failure to comply with the Magistrate's discovery order was the result of their attorney's depression and anxiety at a time when he was undergoing psychoanalysis.").

The moving plaintiffs describe these cases at a high level of generality to extend their reach to the present case. *See* ECF No. 157-1 at 15 ("As was the case for counsel in *Ituarte by Ituarte*, *P.T. Busana*, and *Cirami*, Mr. Cannatelli was clearly suffering significant professional issues that affected his practice."). As the moving plaintiffs acknowledge, the disciplinary proceedings initiated against Attorney Cannatelli involved allegations he comingled funds in an unrelated matter. *See id.* They cite no evidence suggesting that his need to defend against these allegations was as debilitating or prejudicial to his clients as the mental illnesses suffered by the attorneys in the cases they cite.

In any event, the facts here reflect neglect rather than constructive disappearance. Attorney Cannatelli may have done a poor job, but he did not abandon his clients. He filed summary judgment briefs, and those briefs included an argument that ultimately prevailed in the Second Circuit. Moreover, insofar as the moving plaintiffs allege they "do not recall" getting updates from Cannatelli, ECF No. 157-1 at 12, they also provide no evidence suggesting they *sought* such updates. This is in contrast to the clients in *Cirami* and *P.T. Busana*, who took affirmative steps to inquire about the status of their claims and were either misled or ignored. *See* 563 F.2d at 33 ("Cirami stated that he had tried '(o)n several occasions . . . to contact [counsel] as to the status of [his] case. At no time was [he] able speak with him . . . Thereafter, [Cirami] called [a third party] three or four times a week . . . to inquire about the case, and each time [the third party] assured him that 'this was being handled properly by [counsel] who gave [the third party] these assurances constantly.'"); 151 F.R.D. at 33-34 ("[P]laintiff made seven separate attempts to contact Former Counsel either by mail or telex, none of which received a response.").

Finally, it is not at all clear that these plaintiffs wanted to bring free exercise claims prior to the Second Circuit's ruling. The moving plaintiffs' motion suggests that, at the time Cannatelli

was litigating this suit, each moving plaintiff had a religion claim, that he brought that claim to Cannatelli, and that Cannatelli refused to develop it. *See* ECF No. 157-1 at 5 ("[Cannatelli] failed to provide any specific evidence from Plaintiffs in support of their religious claims . . . ."); *id.* at 8 ("Plaintiffs had evidence of these [free exercise] deprivations . . . . But this evidence did not make it into the summary judgment record, dooming Plaintiffs' claims."). But the attached declarations cast doubt on that suggestion. Neither Joseph Pellot-Castellano, Gladding, Goode, nor Rice states that he asked Cannatelli to raise any claim related to his religious beliefs. Joseph Pellot-Castellano declares that he "provided [Cannatelli] with a box of documents related to [his] claims . . . and asked Mr. Cannatelli why he did not include anything about his *medical* claims." ECF No. 157-2 ¶ 20 (emphasis added). Gladding declares that he "d[id] not recall Mr. Cannatelli asking about [his] religious beliefs and religious deprivation in Q-Pod during th[eir] initial conversation." ECF No. 157-3 ¶ 21. Goode similarly declares that he did "not recall Mr. Cannatelli ever performing any individualized assessment of [his] claims or asking [him] questions to understand the facts of [his] particular circumstances." ECF No. 157-6 ¶ 21. And Rice recalls that his conversations with Cannatelli "were about living conditions in Q-Pod, not restrictions on access to religious services." ECF No. 157-5 ¶ 14.

Only the declarations of Ortiz and Rivera suggest they made Cannatelli aware of any free exercise concerns—albeit indirectly. Rivera states that he provided Cannatelli "with all of [his] requests and grievances," and that he "recall[ed] that quite a few of those documents pertained to [his] requests to practice [his] Native American religious beliefs." ECF No. 171-1 at 4. Ortiz states that he "provided Mr. Cannatelli with [a] grievance form," and his declaration suggests that this grievance *may* have contained free exercise allegations. *See* ECF No. 157-4 ¶¶ 14-16 ("I raised my concerns about my treatment in Q-Pod. My prison file should have reflected that I was a Muslim

entitled to congregate religious services. But prison officials still denied my access . . . I remember speaking to Captain Claudio, who asked me what my grievance was about and told me I needed to stop and drop it . . . I provided Mr. Cannatelli with the grievance form that I had filed but Mr. Cannatelli did not ask me about my religious beliefs."). Neither of these declarations, however, supports a finding that Rivera or Ortiz specifically asked or directed Cannatelli to bring a free exercise claim on their behalf; providing Cannatelli with documents, among which were documents pertaining to a free exercise claim, is a far cry from raising those claims with Cannatelli directly.

The moving plaintiffs' declarations, accordingly, fail to rebut the unavoidable suggestion that these plaintiffs are only *now* seeking to bring free exercise claims after the Second Circuit's ruling opened the door to such claims. Perhaps that is also why none of their declarations indicate that these inmates complained to Cannatelli or the Court about Cannatelli's failure to adequately raise or develop their free exercise claims.[3]

## IV.    CONCLUSION

Because neither the case law nor the declarations adequately support the plaintiffs' position, I cannot provide them relief under Rule 60(b)(6). Accordingly, the plaintiff's Rule 60(b) motion (ECF No. 157) is DENIED.

---

[3] Furthermore, to the extent the moving plaintiffs *did* have a desire or inclination to pursue such claims, their motion indicates that they relied on Plaintiff Baltas, rather than Attorney Cannatelli, to do it for them. *See* ECF No. 157-1 at 8 ("Mr. Cannatelli [ ] chose to rely on conclusory, identical affidavits—prepared by Mr. Baltas on behalf of Plaintiffs— that provided no details about the religious deprivations Plaintiffs suffered in Q-Pod.").

9

IT IS SO ORDERED.


_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
June 9, 2026